

# The University of the State of New York

**The State Education Department**
State Review Officer
www.sro.nysed.gov

**No. 21-215**

**Application of a STUDENT WITH A DISABILITY, by his parents, for review of a determination of a hearing officer relating to the provision of educational services by the New York City Department of Education**

**Appearances:**

Law Office of Suzanne Bracker, attorneys for petitioners, by Suzanne Kimberly Bracker, Esq.

Liz Vladeck, General Counsel, attorneys for respondent, by Cynthia Sheps, Esq.

## DECISION

## I. Introduction

This proceeding arises under the Individuals with Disabilities Education Act (IDEA) (20 U.S.C. §§ 1400-1482) and Article 89 of the New York State Education Law. Petitioners (the parents) appeal from the decision of an impartial hearing officer (IHO) which dismissed with prejudice their request for compensatory education arising out of the 2019-20 school year. The appeal must be dismissed.

## II. Overview—Administrative Procedures

When a student in New York is eligible for special education services, the IDEA calls for the creation of an individualized education program (IEP), which is delegated to a local Committee on Special Education (CSE) that includes, but is not limited to, parents, teachers, a school psychologist, and a district representative (Educ. Law § 4402; see 20 U.S.C. § 1414[d][1][A]-[B]; 34 CFR 300.320, 300.321; 8 NYCRR 200.3, 200.4[d][2]). If disputes occur between parents and school districts, incorporated among the procedural protections is the opportunity to engage in mediation, present State complaints, and initiate an impartial due process hearing (20 U.S.C. §§ 1221e-3, 1415[e]-[f]; Educ. Law § 4404[1]; 34 CFR 300.151-300.152, 300.506, 300.511; 8 NYCRR 200.5[h]-[*l*]).

New York State has implemented a two-tiered system of administrative review to address disputed matters between parents and school districts regarding "any matter relating to the identification, evaluation or educational placement of a student with a disability, or a student suspected of having a disability, or the provision of a free appropriate public education to such student" (8 NYCRR 200.5[i][1]; see 20 U.S.C. § 1415[b][6]-[7]; 34 CFR 300.503[a][1]-[2], 300.507[a][1]).  First, after an opportunity to engage in a resolution process, the parties appear at an impartial hearing conducted at the local level before an IHO (Educ. Law § 4404[1][a]; 8 NYCRR 200.5[j]).  An IHO typically conducts a trial-type hearing regarding the matters in dispute in which the parties have the right to be accompanied and advised by counsel and certain other individuals with special knowledge or training; present evidence and confront, cross-examine, and compel the attendance of witnesses; prohibit the introduction of any evidence at the hearing that has not been disclosed five business days before the hearing; and obtain a verbatim record of the proceeding (20 U.S.C. § 1415[f][2][A], [h][1]-[3]; 34 CFR 300.512[a][1]-[4]; 8 NYCRR 200.5[j][3][v], [vii], [xii]).  The IHO must render and transmit a final written decision in the matter to the parties not later than 45 days after the expiration period or adjusted period for the resolution process (34 CFR 300.510[b][2], [c], 300.515[a]; 8 NYCRR 200.5[j][5]).  A party may seek a specific extension of time of the 45-day timeline, which the IHO may grant in accordance with State and federal regulations (34 CFR 300.515[c]; 8 NYCRR 200.5[j][5]).  The decision of the IHO is binding upon both parties unless appealed (Educ. Law § 4404[1]).

A party aggrieved by the decision of an IHO may subsequently appeal to a State Review Officer (SRO) (Educ. Law § 4404[2]; see 20 U.S.C. § 1415[g][1]; 34 CFR 300.514[b][1]; 8 NYCRR 200.5[k]).  The appealing party or parties must identify the findings, conclusions, and orders of the IHO with which they disagree and indicate the relief that they would like the SRO to grant (8 NYCRR 279.4).  The opposing party is entitled to respond to an appeal or cross-appeal in an answer (8 NYCRR 279.5).  The SRO conducts an impartial review of the IHO's findings, conclusions, and decision and is required to examine the entire hearing record; ensure that the procedures at the hearing were consistent with the requirements of due process; seek additional evidence if necessary; and render an independent decision based upon the hearing record (34 CFR 300.514[b][2]; 8 NYCRR 279.12[a]).  The SRO must ensure that a final decision is reached in the review and that a copy of the decision is mailed to each of the parties not later than 30 days after the receipt of a request for a review, except that a party may seek a specific extension of time of the 30-day timeline, which the SRO may grant in accordance with State and federal regulations (34 CFR 300.515[b], [c]; 8 NYCRR 200.5[k][2]).

**III. Facts and Procedural History**

The student's educational history has been discussed previously as he was the subject of prior due process proceedings (see Application of a Student with a Disability, Appeal No. 20-089; Application of a Student with a Disability, Appeal No. 13-224).  As relevant to the parties' dispute in this proceeding, during the 2018-19 school year, the student received special education services and attended a full-time program at the Association for Metroarea Autistic Children Inc. (AMAC) prior to the school's closure at the end of that school year (see Tr. pp. 184-95; Parent Ex. F at p. 79).[1]  After AMAC closed in June 2019, the student was placed at the AHRC Middle School in

---

[1] The student's eligibility for special education and related services as a student with autism is not in dispute in this appeal (see 34 CFR 300.8[c][1]; 8 NYCRR 200.1[zz][1]).

September 2019 and he attended that program for the 2019-20 school year (Tr. pp. 279; Parent Ex. F at pp. 79-81; IHO Ex. II at pp. 1-2).  Beginning July 1, 2020, the student began attending the Gersh Academy (Gersh) after obtaining an order for prospective placement at Gersh for the 2020-21 school year as part of a compensatory education award in a prior matter concerning the 2019-20 school year (Tr. p. 194; IHO Ex. II at pp. 2-3; see Parent Ex. H at p. 25).

In three separate due process complaint notices dated June 11, 2018, December 19, 2019, and January 7, 2020, the parents alleged that the district failed to offer the student a FAPE during the 2017-18, 2018-19, and 2019-20 school years (see Answer Exs. 1-3).[2]  The three proceedings arising from those due process complaint notices were consolidated into a single impartial hearing first initiated by the June 11, 2018 due process complaint notice; that matter will hereinafter be referred to as "proceeding I" (see Parent Ex. G at pp. 1-3).  While proceeding I was ongoing, the parents commenced an action in District Court, Eastern District of New York, seeking a determination regarding the student's pendency placement (see Parent Ex. E at p. 1).  In an August 27, 2018 order, the District Court set forth the student's pendency placement as arising from a February 2018 stipulation between the parties, which provided for, among other things, 20 hours of home-based special education teacher support services (SETSS) (Parent Ex. E at p. 3; see Parent Ex. C at p. 2).  There is no dispute that the August 27, 2018 District Court's pendency determination was in effect during the 2019-20 school year.

An IHO issued a decision on the merits of proceeding I on April 20, 2020 (Parent Ex. G at p. 17).  At the close of the hearing in proceeding I, the parents requested immediate placement of the student at Gersh, 20 hours per week of home-based applied behavioral analysis (ABA), ten 30-minute sessions of speech-language therapy per week in the school, and compensatory education consisting of 460 hours of ABA services and 536 hours of speech-language therapy (see Parent Ex. H at p. 18).  The IHO, in proceeding I, found that the district failed to offer the student a FAPE for the 2017-18, 2018-19, and 2019-20 school years, that Gersh would be an appropriate placement for the student, and that equitable considerations favored relief for the parents (Parent Ex. G at pp. 7-12).  For compensatory education relief, the IHO noted that during the impartial hearing the parents' request differed from what was later contained in their closing brief, and, holding the parents to the relief requested during the hearing, the IHO ordered the district to provide 300 hours of 1:1 speech-language therapy, 300 hours of 1:1 ABA services, and prospective tuition and costs for the student's attendance at Gersh for the 2020-21 extended school year (id. at pp. 12-16).

---

[2] The district has annexed four exhibits related to prior proceedings to its answer for consideration as additional evidence.  Generally, documentary evidence not presented at an impartial hearing is considered in an appeal from an IHO's decision only if such additional evidence could not have been offered at the time of the impartial hearing and the evidence is necessary in order to render a decision (see, e.g., Application of a Student with a Disability, Appeal No. 08-030; Application of a Student with a Disability, Appeal No. 08-003; see also 8 NYCRR 279.10[b]; L.K. v. Ne. Sch. Dist., 932 F. Supp. 2d 467, 488-89 [S.D.N.Y. 2013] [holding that additional evidence is necessary only if, without such evidence, the SRO is unable to render a decision]).  The district's proffered additional evidence is necessary to render a decision in this matter, in order to have a full understanding of the procedural posture in the present matter.  Therefore, I will consider the district's proposed exhibits.  Additionally, it should be noted that the June 11, 2018 due process complaint notice is misdated as June 11, 2017; however, it includes an email attachment showing that it was sent on June 11, 2018 (Answer Ex. 1 at pp. 1, 5).  Similarly, the January 7, 2020 due process complaint notice was misdated, showing January 7, 2019 on the first page; however, the signature line is dated January 7, 2020 and the complaint includes facts that took place after January 2019 (Answer Ex. 3 at pp. 1, 3, 8).

3

The parents appealed the IHO's determination in proceeding I and asserted that the IHO erred in failing to order the district to provide 20 hours per week of home-based 1:1 ABA services and 40 hours per year of home-based 1:1 speech-language therapy going forward, in addition to the compensatory education that had been ordered (see Parent Ex. H at p. 12). Notably, the parents framed their request as a continuation of the services agreed to in the February 2018 stipulation, which had formed the basis for the student's pendency program in proceeding I (see Parent Exs. C; E; H at p. 12). In a decision dated July 29, 2020, an SRO determined that the hearing record in proceeding I supported the parents' request for 20 hours per week of 1:1 home-based ABA services and prospective placement of the student at Gersh for the 2020-21 school year, and ordered the district to provide payment (Parent Ex. H at pp. 18-26). The SRO denied the parents' request for 40 hours per year of home-based 1:1 speech-language therapy, finding that the home-based speech-language therapy was not necessary for the student to receive a FAPE (id.). Neither party appealed the SRO decision.[3]

The present matter, hereinafter referred to as "proceeding II," was commenced by a due process complaint notice dated January 27, 2021, wherein the parents alleged that the district had failed to provide 762 hours of instruction during the 2019-20 school year over the period from March 1, 2020 through June 30, 2020 (IHO Ex. II at p. 1). According to the parents, the district was required to provide placement in a nonpublic school and 20 hours per week of home-based 1:1 instruction pursuant to the February 2018 stipulation and the District Court's August 2018 pendency order (id.; see Parent Ex. E).[4] The parents alleged that the student had missed 501 hours of "instruction" due to temporary closure and disruptions in services at AHRC caused by the COVID-19 pandemic, and missed 261 hours of "home-based 1:1 instruction" when providers were "also unable to visit[] him" (IHO Ex. II at pp. 2-3).[5] The parents requested compensatory education consisting of "752 hours of 1:1 ABA therapy and 1:1 speech therapy" to be used "as time permits, over the next five years" (id. at p. 4).[6]

An impartial hearing commenced in proceeding II on April 9, 2021 and concluded on September 21, 2021 after seven days of proceedings (Tr. pp. 1-329). In a decision dated October 4, 2021, the IHO dismissed the parents' due process complaint notice with prejudice upon a finding that the doctrine of res judicata, or claim preclusion—which precludes parties from relitigating issues that were or could have been raised in a prior proceeding—applied to the parents' claim for

---

[3] Much more could be said of the tangled web of litigation concerning this student's education during the school years at issue, the district has set forth additional facts and procedural history in the first six pages of its answer (see Answer ¶¶ 1-11).

[4] The first page of the due process complaint notice states the wrong date, January 27, 2020, while the signature date on the final page is correct, January 27, 2021 (IHO Ex. II).

[5] In the parents' post-hearing brief, the parents amended their requested relief to compensate for 500 hours of missed classroom instruction and 271 hours of missed home-based instruction in accord with the parents' testimony during the hearing; however, in adding the missed hours together, the parents came up with 721 hours of missed instruction (IHO Ex. I at pp. 4, 9, 20-24).

[6] It appears as though the "752 hours" was a typographical error, as the number of hours alleged as being missed adds up to 762 hours, the same number identified in the beginning of the due process complaint notice (IHO Ex. II).

4

compensatory pendency services arising from the 2019-20 school year (IHO Decision at pp. 4-6). The IHO found that the IHO decision dated April 20, 2020 and the July 29, 2020 SRO decision which affirmed in part and denied in part the parents' request for compensatory education in proceeding I had redressed all of the denial of FAPE and compensatory education issues for the 2019-20 school year, which precluded the parents from relitigating those issues in proceeding II (id.; see Parent Exs. G; H).

## IV. Appeal for State-Level Review

The parents appeal from the final determination in proceeding II,[7] arguing that the IHO erred in dismissing the parents' January 27, 2021 due process complaint notice as barred by res judicata. The parents contend that res judicata does not apply to the claims brought in proceeding II because the deprivation of the pendency services for which the parents seek compensatory services occurred between March 1, 2020 and June 30, 2020, after the June 2017, December 2019, and January 2020 filings of the three due process complaint notices that were litigated in Proceeding I (see Answer Exs. 1-3). They contend that claims arising subsequent to a prior action "need not and often perhaps could not" have been brought in the prior action, and that the crucial date is the filing of the due process complaints in proceeding I.[8]

In an answer, the district contends that the parents could have raised the issue of a failure to fully implement pendency services during the course of proceeding I during the 2019-20 school year because the asserted loss of services began March 1, 2020 and the impartial hearing in proceeding I continued through a record close date of April 17, 2020, the IHO Decision in proceeding I on May 21, 2020, the subsequent appeal and request for review to the SRO, and the unappealed SRO decision dated July 29, 2020 (Parent Exs. F; G; H). The district asserts that therefore the IHO in proceeding II correctly determined that the compensatory relief sought in proceeding II stems from claims concerning the student's 2019-20 school year, which were fully determined by the decisions issued by the IHO and the SRO in proceeding I. The district further contends to the extent that the parents had claims concerning the implementation of the then in

---

[7] The parents initial request for review was rejected for not complying with the practice regulations and the parents filed an amended request for review. Additionally, although the initial request for review and amended request for review were executed by the parents, one of whom is an attorney, appearing pro se, they were served on the district by the same attorney who appears on the parents' reply as counsel for the parents and who is noted as appearing for the parents in this decision.

[8] The parents also invoke the "Rehabilitation Act and the Americans with Disabilities Act" as additional bases for relief (Req. for Rev. ¶¶ 29-30). However, as the district points out, an SRO's jurisdiction is limited by State law to matters arising under the IDEA and Article 89 of the Education Law (Educ. Law § 4404[2] [providing that SROs review IHO determinations "relating to the determination of the nature of a child's handicapping condition, selection of an appropriate special education program or service and the failure to provide such program"]). Courts have also recognized that the Education Law makes no provision for State-level administrative review of IHO decisions with regard to section 504 (see A.M. v. New York City Dep't of Educ., 840 F. Supp. 2d 660, 672 & n.17 [E.D.N.Y. 2012] [noting that "[u]nder New York State education law, the SRO's jurisdiction is limited to matters arising under the IDEA or its state counterpart"], aff'd, 513 Fed. App'x 95 [2d Cir. May 12, 2013]; see also F.C. v. New York City Dep't of Educ., 2016 WL 8716232, at *11 [S.D.N.Y. Aug. 5, 2016]). Therefore, I do not have jurisdiction to review any portion of the parents' claims regarding violations of section 504 and they will not be further discussed.

effect pendency order, the parents could have pursued relief through the State complaint process or in one of the ongoing District Court proceedings.

The parents submit a reply to the district's answer, in which the parents argue that the district's continuing course of conduct may give rise to two different causes of action. In addition, the parents object to the district's additional evidence submitted on appeal, specifically noting that the parents had attempted to introduce the June 9, 2021 so ordered stipulation, submitted as Answer Exhibit 4, during the hearing but were denied by the IHO.

## V. Applicable Standards

Two purposes of the IDEA (20 U.S.C. §§ 1400-1482) are (1) to ensure that students with disabilities have available to them a FAPE that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living; and (2) to ensure that the rights of students with disabilities and parents of such students are protected (20 U.S.C. § 1400[d][1][A]-[B]; see generally Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 239 [2009]; Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 206-07 [1982]).

A FAPE is offered to a student when (a) the board of education complies with the procedural requirements set forth in the IDEA, and (b) the IEP developed by its CSE through the IDEA's procedures is reasonably calculated to enable the student to receive educational benefits (Rowley, 458 U.S. at 206-07; T.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 151, 160 [2d Cir. 2014]; R.E. v. New York City Dep't of Educ., 694 F.3d 167, 189-90 [2d Cir. 2012]; M.H. v. New York City Dep't of Educ., 685 F.3d 217, 245 [2d Cir. 2012]; Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 [2d Cir. 2005]). "'[A]dequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP'" (Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 129 [2d Cir. 1998], quoting Rowley, 458 U.S. at 206; see T.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 253 [2d Cir. 2009]). The Supreme Court has indicated that "[t]he IEP must aim to enable the child to make progress. After all, the essential function of an IEP is to set out a plan for pursuing academic and functional advancement" (Endrew F. v. Douglas Cty. Sch. Dist. RE-1, 580 U.S. __, 137 S. Ct. 988, 999 [2017]). While the Second Circuit has emphasized that school districts must comply with the checklist of procedures for developing a student's IEP and indicated that "[m]ultiple procedural violations may cumulatively result in the denial of a FAPE even if the violations considered individually do not" (R.E., 694 F.3d at 190-91), the Court has also explained that not all procedural errors render an IEP legally inadequate under the IDEA (M.H., 685 F.3d at 245; A.C. v. Bd. of Educ. of the Chappaqua Cent. Sch. Dist., 553 F.3d 165, 172 [2d Cir. 2009]; Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 381 [2d Cir. 2003]). Under the IDEA, if procedural violations are alleged, an administrative officer may find that a student did not receive a FAPE only if the procedural inadequacies (a) impeded the student's right to a FAPE, (b) significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a FAPE to the student, or (c) caused a deprivation of educational benefits (20 U.S.C. § 1415[f][3][E][ii]; 34 CFR 300.513[a][2]; 8 NYCRR 200.5[j][4][ii]; Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 525-26 [2007]; R.E., 694 F.3d at 190; M.H., 685 F.3d at 245).

The IDEA directs that, in general, an IHO's decision must be made on substantive grounds based on a determination of whether the student received a FAPE (20 U.S.C. § 1415[f][3][E][i]).

6

A school district offers a FAPE "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction" (Rowley, 458 U.S. at 203).  However, the "IDEA does not itself articulate any specific level of educational benefits that must be provided through an IEP" (Walczak, 142 F.3d at 130; see Rowley, 458 U.S. at 189).  "The adequacy of a given IEP turns on the unique circumstances of the child for whom it was created" (Endrew F., 137 S. Ct. at 1001).  The statute ensures an "appropriate" education, "not one that provides everything that might be thought desirable by loving parents" (Walczak, 142 F.3d at 132, quoting Tucker v. Bay Shore Union Free Sch. Dist., 873 F.2d 563, 567 [2d Cir. 1989] [citations omitted]; see Grim, 346 F.3d at 379).  Additionally, school districts are not required to "maximize" the potential of students with disabilities (Rowley, 458 U.S. at 189, 199; Grim, 346 F.3d at 379; Walczak, 142 F.3d at 132).  Nonetheless, a school district must provide "an IEP that is 'likely to produce progress, not regression,' and . . . affords the student with an opportunity greater than mere 'trivial advancement'" (Cerra, 427 F.3d at 195, quoting Walczak, 142 F.3d at 130 [citations omitted]; see T.P., 554 F.3d at 254; P. v. Newington Bd. of Educ., 546 F.3d 111, 118-19 [2d Cir. 2008]).  The IEP must be "reasonably calculated to provide some 'meaningful' benefit" (Mrs. B. v. Milford Bd. of Educ., 103 F.3d 1114, 1120 [2d Cir. 1997]; see Endrew F., 137 S. Ct. at 1001 [holding that the IDEA "requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances"]; Rowley, 458 U.S. at 192).  The student's recommended program must also be provided in the least restrictive environment (LRE) (20 U.S.C. § 1412[a][5][A]; 34 CFR 300.114[a][2][i], 300.116[a][2]; 8 NYCRR 200.1[cc], 200.6[a][1]; see Newington, 546 F.3d at 114; Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 108 [2d Cir. 2007]; Walczak, 142 F.3d at 132).

An appropriate educational program begins with an IEP that includes a statement of the student's present levels of academic achievement and functional performance (see 34 CFR 300.320[a][1]; 8 NYCRR 200.4[d][2][i]), establishes annual goals designed to meet the student's needs resulting from the student's disability and enable him or her to make progress in the general education curriculum (see 34 CFR 300.320[a][2][i], [2][i][A]; 8 NYCRR 200.4[d][2][iii]), and provides for the use of appropriate special education services (see 34 CFR 300.320[a][4]; 8 NYCRR 200.4[d][2][v]).[9]

The burden of proof is on the school district during an impartial hearing, except that a parent seeking tuition reimbursement for a unilateral placement has the burden of proof regarding the appropriateness of such placement (Educ. Law § 4404[1][c]; see R.E., 694 F.3d at 184-85).

## VI. Discussion

### A. IHO's Dismissal of January 2021 Due Process Complaint Notice

The IHO dismissed the parents' request for compensatory education based on a finding that the issue was, or should have been, raised in proceeding I (IHO Decision at pp. 4-6).

---

[9] The Supreme Court has stated that even if it is unreasonable to expect a student to attend a regular education setting and achieve on grade level, the educational program set forth in the student's IEP "must be appropriately ambitious in light of his [or her] circumstances, just as advancement from grade to grade is appropriately ambitious for most children in the regular classroom.  The goals may differ, but every child should have the chance to meet challenging objectives" (Endrew F., 137 S. Ct. at 1000).

7

It is well-established that the doctrine of res judicata and the related doctrine of collateral estoppel apply to administrative proceedings when the agency acts in a judicial capacity (see K.C. v. Chappaqua Cent. Sch. Dist., 2017 WL 2417019, at *6 [S.D.N.Y. June 2, 2017]; K.B. v. Pearl River Union Free Sch. Dist., 2012 WL 234392, at *5 [S.D.N.Y. Jan. 13, 2012]; Schreiber v. E. Ramapo Cent. Sch. Dist., 700 F. Supp. 2d 529, 554-55 [S.D.N.Y. 2010]; Grenon v. Taconic Hills Cent. Sch. Dist., 2006 WL 3751450, at *6 [N.D.N.Y. Dec. 19. 2006]).  The doctrine of res judicata (or claim preclusion) "precludes parties from relitigating issues that were or could have been raised in a prior proceeding" (K.B., 2012 WL 234392, at *4; see Perez v. Danbury Hosp., 347 F.3d 419, 426 [2d Cir. 2003]; Murphy v. Gallagher, 761 F.2d 878, 879 [2d Cir. 1985]; Grenon, 2006 WL 3751450, at *6).  Res judicata applies when: (1) the prior proceeding involved an adjudication on the merits; (2) the prior proceeding involved the same parties or those in privity with the parties; and (3) the claims alleged in the subsequent action were, or could have been, raised in the prior proceeding (see K.B., 2012 WL 234392, at *4; Grenon, 2006 WL 3751450, at *6).[10]  Claims that could have been raised are described as those that "emerge from the same 'nucleus of operative fact' as any claim actually asserted" in the prior adjudication (Malcolm v. Honeoye Falls Lima Cent. Sch. Dist., 517 Fed. App'x 11, 12 [2d Cir. Apr. 1, 2013]).[11]

As to the first two elements, there is no dispute that proceeding I involved an adjudication on the merits of the 2019-20 school year and that proceeding I involved the same parties as proceeding II.  Additionally, proceeding I resulted in an award of 300 hours of speech-language therapy, 300 hours of ABA services, and prospective placement of the student for the 2020-21 school year (see Parent Ex. H at pp. 11-12).  Turning to the third element of res judicata, i.e., whether the claims in proceeding II were or could have been raised in proceeding I, the claims raised in this proceeding relate to the district's provision of educational services to the student as part of what the district was previously ordered to provide to the student pursuant to pendency in the prior proceeding (see Parent Exs. C; E; IHO Ex. 2).  Additionally, as the district points out, the parents were aware of the disruptions to the delivery of the student's education and services at AHRC and in the home cause by the COVID-19 pandemic during the appeal of proceeding I to the Office of State Review, and the parents failed to assert any claim arising from missed pendency services and failed to specifically request compensatory pendency services (see Parent Ex. H).  A parent may raise an issue concerning the student's pendency or pendency implementation during an impartial hearing or during a subsequent appeal when and if such a concern arises (see, e.g., Application of the Board of Educ., Appeal No. 17-097).  Thus, had the parents raised a claim

---

[10] Additionally, while the "consolidation of multiple issues into a single complaint where such issues are known at the time of the filing of the initial complaint" are encouraged (Due Process Procedures for Parents and Children, 70 Fed. Reg. 35782 [June 21, 2005]).

[11] The doctrine of collateral estoppel "precludes parties from litigating a legal or factual issue already decided in an earlier proceeding" (Grenon, 2006 WL 3751450, at *6 [internal quotations omitted]).  To establish that a claim is collaterally estopped, a party must show that:

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits

(Grenon, 2006 WL 3751450, at *6 [internal quotations omitted]; see Perez, 347 F.3d at 426; Boguslavsky v. Kaplan, 159 F.3d 715, 720 [2d Cir. 1998]).

8

concerning the implementation of the student's pendency services during proceeding I, it could have been appropriately addressed by either the IHO or the SRO in proceeding I.

Relatedly, the unappealed SRO decision in proceeding I stands for the proposition that its determinations and the compensatory education the district was ordered to provide the student as part of proceeding I addressed the alleged denial of FAPE for the entire 2019-20 school year (see Parent Ex. H). Thus, if the parents had a concern that the SRO decision in proceeding I failed to provide compensatory pendency services that the student should have received, the parents had an opportunity—after they were aware of all of the alleged missed services during the 2019-20 school year—to appeal that decision to a District Court, and they did not do so.[12]

Also worth considering is a heretofore unconsidered proceeding that the parents pursued in District Court, which the district identifies in its answer.[13] According to a "Stipulation of Settlement and Discontinuance" between the parents and the district, two actions commenced by the parents (filed in District Court June 7, 2019 and July 1, 2019) that raised claims concerning the student's 2019-20 school year were consolidated by a District Court on February 11, 2021 (see Answer Ex. 4). The settlement was so ordered on June 9, 2021, and by its terms:

> "the Parties now wish to resolve all remaining claims that were raised in these consolidated cases, and any and all claims remaining in the underlying administrative proceedings, without further proceedings . . . All claims brought by Plaintiffs in connection with these consolidated actions, including but not limited to all claims that were or could have been asserted by Plaintiffs in the underlying administrative proceedings, are hereby dismissed, with prejudice, in exchange for the consideration described in paragraph "2" below"

(Answer Ex. 4).

Although the stipulation of settlement and the hearing record do not provide sufficient details to make a finding regarding the underlying actions, it certainly does appear that the district court actions, as well as proceeding I, awarded the parents relief for the period of time they are raising in this proceeding and that, alternatively, the parents may have negotiated away the right to make any further claims concerning the student's 2019-20 school year in return for the valuable consideration they received pursuant to the settlement (see District Ex. 4). For example, in the whereas provisions, the parties laid out the district court actions commenced in June and July 2019, a September 2019 agreement to place the student at AHRC, the December 2019 due process complaint notice, the April 2020 IHO decision, and the July 2020 SRO decision, and further

---

[12] I note that the final due process complaint notice filed by the parents in proceeding I requested compensatory education and placement at Gersh for the 2020-21 school year to remedy, among other things, "missed" instruction during the 2019-20 school year (see Answer Ex. 3 at pp. 2-3, 7-8).

[13] In their reply, the parents admit to the existence of this civil case in District Court and the parents do not contend that the document is inaccurate (Reply ¶ 8; Answer Ex. 4). Rather the parents contend that at the time the action was commenced the facts at issue herein had not yet occurred (Reply ¶ 8). The parents object to the admission of the document, asserting that they attempted to introduce the same piece of evidence during the hearing (id. ¶ 27). However, this argument shows that the document was considered relevant to this proceeding by both parties and, accordingly, further justifies the decision to accept the document for consideration on appeal.

indicated that "the Parties now wished to resolve all remaining claims that were raised in these consolidated cases, and any and all claims remaining in the underlying administrative proceedings" (id. at pp. 1-2). As noted above, the February 2018 pendency order formed the basis for the student's pendency services during proceeding I, accordingly, it appears as though implementation of that pendency order may have been encompassed as a part of the underlying administrative proceedings as set forth in the stipulation of settlement.

Under these circumstances—and, in particular, considering the complexity of the procedural history of this matter—it is difficult to see a resolution to this proceeding in the parents' favor that would not intrude into either the February 2018 pendency order or the June 2021 so ordered stipulation of settlement. Any such finding would steer this tribunal towards enforcement of awards the parents have received in district court. However, neither IHOs nor SROs have authority to enforce prior decisions rendered by administrative hearing officers, much less to enforce decisions of the courts (see Educ. Law §§ 4404[1][a]; [2]; see, e.g., A.R. v. New York City Dep't of Educ., 407 F.3d 65, 76, 78 n.13 [2d Cir. 2005] [noting that IHOs do not retain jurisdiction to enforce their orders and that a party who receives a favorable administrative determination may enforce it in court]; A.T. v. New York State Educ. Dep't, 1998 WL 765371, at *7, *9-*10 & n.16 [E.D.N.Y. Aug. 4, 1998] [noting that SROs have no independent "administrative enforcement" power and granting an injunction requiring the district to implement a final SRO decision]).

Accordingly, there is insufficient basis presented in the parties' arguments on appeal or in the hearing record, as whole, to disturb the IHO's dismissal, with prejudice, of the parents' claims raised in proceeding II. However, as this matter raises some concerns with regard to the needs of students with disabilities that have been impacted by the COVID-19 pandemic, a brief discussion of the district's obligations in rendering pendency services during the pandemic is provided below.

**B. Compensatory Education – Pendency**

The IDEA and the New York State Education Law require that a student remain in his or her then current educational placement, unless the student's parents and the board of education otherwise agree, during the pendency of any proceedings relating to the identification, evaluation or placement of the student (20 U.S.C. § 1415[j]; Educ. Law §§ 4404[4]; 34 CFR 300.518[a]; 8 NYCRR 200.5[m]; see Ventura de Paulino v. New York City Dep't of Educ., 959 F.3d 519, 531 [2d Cir. 2020]; T.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 170-71 [2d Cir. 2014]; Mackey, 386 F.3d at 163, citing Zvi D. v. Ambach, 694 F.2d 904, 906 [2d Cir. 1982]; M.G. v. New York City Dep't of Educ., 982 F. Supp. 2d 240, 246-47 [S.D.N.Y. 2013]; Student X v. New York City Dep't of Educ., 2008 WL 4890440, at *20 [E.D.N.Y. Oct. 30, 2008]; Bd. of Educ. of Poughkeepsie City Sch. Dist. v. O'Shea, 353 F. Supp. 2d 449, 455-56 [S.D.N.Y. 2005]). The pendency provision does not require that a student remain in a particular site or location (Ventura de Paulino, 959 F.3d at 532; T.M., 752 F.3d at 170-71; Concerned Parents & Citizens for the Continuing Educ. at Malcolm X Pub. Sch. 79 v. New York City Bd. of Educ., 629 F.2d 751, 753, 756 [2d Cir. 1980]; see Child's Status During Proceedings, 71 Fed. Reg. 46709 [Aug. 14, 2006] [noting that the "current placement is generally not considered to be location-specific"]), or at a particular grade level (Application of a Child with a Disability, Appeal No. 03-032; Application of a Child with a Disability, Appeal No. 95-16). Furthermore, the Second Circuit has stated that educational placement means "the general type of educational program in which the child is placed" (Concerned Parents, 629 F.2d at 753, 756), and that "the pendency provision does not guarantee a

10

disabled child the right to remain in the exact same school with the exact same service providers" (T.M., 752 F.3d at 171).

In addition, the Second Circuit has held that where a district fails to implement a student's pendency placement, students should receive the pendency services to which they were entitled as a compensatory remedy (E. Lyme, 790 F.3d at 456 [full reimbursement for unimplemented pendency services awarded because less than complete reimbursement for missed pendency services "would undermine the stay-put provision by giving the agency an incentive to ignore the stay-put obligation"]; see Student X, 2008 WL 4890440, at *25, *26 [services that the district failed to implement under pendency awarded as compensatory education services where district "disregarded the 'automatic injunction' and 'absolute rule in favor of the status quo' mandated by the [IDEA] and wrongfully terminated [the student's] at-home services"] [internal citations omitted]).

The hearing record demonstrates that the education the student was receiving at the beginning of the COVID-19 pandemic was disrupted beginning in March 2020. Although the student's program at the time was dictated by the student's pendency, there are multiple countervailing concerns to consider moving forward with how best to program the student's education to address the disruption to the student's services during the pandemic and how to provide the student with an appropriate program in the future. Thus, even had the IHO erred in dismissing the parents' claims, further compensatory services to remedy pendency services that the student missed due to the COVID-19 pandemic may not have been warranted.

In their pleadings, the parents refer to proceeding II as "the pandemic case" (Reply ¶ D). To the extent that the parents take issue with the executive decision to close schools or the district's actions to deliver instruction and services to students with disabilities remotely during the closure, those allegations are systemic in nature, and no provision of the IDEA or the Education Law confers jurisdiction upon a state or local educational agency to sit in review of alleged systemic violations (see Levine v. Greece Cent. Sch. Dist., 2009 WL 261470, at *9 [W.D.N.Y. Feb. 4, 2009] [noting that the Second Circuit has "consistently distinguished . . . systemic violations to be addressed by the federal courts, from technical questions of how to define and treat individual students' learning disabilities, which are best addressed by administrators"], aff'd, 353 Fed. App'x 461 [2d Cir. Nov. 12, 2009]; see also Application of a Student with a Disability, Appeal No. 11-091). Thus, neither the IHOs, nor I for that matter, have plenary authority to pass judgment on the Governor's or the district's policies. Additionally, even if I possessed such authority, courts have held that certain summary administrative actions that have the effect of limiting the availability of protections otherwise afforded by law under ordinary circumstances may be justified as part of the government's response to emergency situations (see, e.g., Hernandez v. Grisham, 508 F. Supp. 3d 893, 979 [D.N.M. 2020]), so it is far from clear that the parents would prevail on their arguments regarding missed services if that argument were raised in the appropriate forum.

Moreover, both the USDOE and SED's Office of Special Education have issued guidance acknowledging that the global pandemic and the resulting closure of schools resulted in "an inevitable delay" in districts providing services to students with disabilities or engaging in the decision-making process regarding such services ("Supplemental Fact Sheet Addressing the Risk of COVID-19 in Preschool, Elementary and Secondary Schools While Serving Children with Disabilities," 76 IDELR 104 [OCR & OSERS 2020]; "Compensatory Services for Students with Disabilities as a Result of the COVID-19 Pandemic," at p. 1, Office of Special Educ. Mem. [June

11

2021], available at http://www.p12.nysed.gov/specialed/publications/2020-memos/documents/compensatory-services-for-students-with-disabilities-result-covid-19-pandemic.pdf).  In addition, the USDOE has noted reports from some local educational agencies that they were "having difficulty consistently providing the services determined necessary to meet [each] child's needs" and that, as a result, "some children may not have received appropriate services to allow them to make progress anticipated in their IEP goals" ("Return To School Roadmap: Development and Implementation of Individualized Education Programs in the Least Restrictive Environment under the Individuals with Disabilities Education Act," 79 IDELR 232 [OSERS 2021]).

To address these delays and other delivery-related issues that occurred as a result of the pandemic, OSEP and NYSED's Office of Special Education have indicated that, when school resumes, a CSE should convene and "make individualized decisions about each child's present levels of academic achievement and functional performance and determine whether, and to what extent, compensatory services may be necessary to mitigate the impact of the COVID-19 pandemic on the child's receipt of appropriate services" ("Return To School Roadmap," 79 IDELR 232; "Compensatory Services for Students with Disabilities as a Result of the COVID-19 Pandemic," at pp. 1, 3; see also "Supplemental Fact Sheet Addressing the Risk of COVID-19 in Preschool, Elementary and Secondary Schools While Serving Children with Disabilities," 76 IDELR 104; "Questions and Answers on Providing Services to Children with Disabilities During the Coronavirus Disease 2019 Outbreak," 76 IDELR 77 [OCR & OSERS 2020]; "Supplement #2 - Provision of Services to Students with Disabilities during Statewide School Closures Due to Novel Coronavirus (Covid-19) Outbreak in New York State," at pp. 2-5, Office of Special Educ. Mem. [June 2020], available at http://www.p12.nysed.gov/specialed/publications/2020-memos/special-education-supplement-2-covid-qa-memo-6-20-2020.pdf).  The CSE's review might include a discussion of whether the student has new or different needs compared to before the pandemic, whether the student experienced a loss of skill or a lack of expected progress towards annual goals and in the general education curriculum, whether evaluations of the student or implementation of an IEP was delayed, and whether some of the student's IEP services could not be implemented due to the available methods of service delivery or whether such methods of service delivery were not appropriate to meet the student's needs ("Return To School Roadmap," 79 IDELR 232; "Compensatory Services for Students with Disabilities as a Result of the COVID-19 Pandemic," at pp. 3-4; see "Supplement #2 - Provision of Services to Students with Disabilities during Statewide School Closures Due to Novel Coronavirus (Covid-19) Outbreak in New York State," at p. 1).

If the parent disagrees with a CSE's determination regarding the student's entitlement to compensatory services, State guidance notes that:

> Parents of students with disabilities may resolve disputes with school districts regarding the provision of FAPE by pursuing one of the dispute resolution options provided for in the IDEA.  A parent may file a State complaint directly with NYSED in accordance with Commissioner's Regulation section 200.5(*l*), request mediation in accordance with Commissioner's Regulation section 200.5(h), or file a due process complaint and proceed to hearing in accordance with Commissioner's Regulation section 200.5(j).

("Compensatory Services for Students with Disabilities as a Result of the COVID-19 Pandemic," at p. 5; "Supplement #2 - Provision of Services to Students with Disabilities during Statewide School Closures Due to Novel Coronavirus (Covid-19) Outbreak in New York State," at p. 6).

Here, there is no indication that a CSE has conducted such a review.  There is evidence in the hearing record that could support a finding that the student regressed during remote learning and that remote learning was not appropriate for the student (Tr. pp. 106-10, 164-67, 184-92, 203, 284-93; Parent Exs. I; P-BB); however, it does not appear that a CSE discussed or considered if compensatory education would be appropriate to make-up for any loss of skill attendant to the school closure.  Additionally, although the federal and State guidance contemplates a CSE determination regarding compensatory services to make up for a failure to deliver a FAPE to a student due to the pandemic, the parties have not presented any rationale as to why a similar process should not take place for a determination as to the impact of missed pendency services on a student's education.

In sum, the USDOE and NYSED's Office of Special Education have indicated that, under these unique circumstances, a CSE should have the first opportunity to consider the student's needs and whether any additional services may be warranted as a result of the pandemic.  There is no indication that this has yet occurred for this student.

However, due to the unique procedural history of this matter, the parents had previously requested placement of the student at Gersh for the 2020-21 school year, and were awarded this placement as compensatory education as part of a prior State-level review (Application of a Student with a Disability, Appeal No. 20-089 at pp. 22-26).  As part of that decision, the district was directed to reconvene a CSE "by June 1, 2021 to conduct a review of the student's progress at Gersh and, if necessary, revise the educational placement for the period following June 30, 2021 in accordance with federal and State law"; in addition, the parents were notified that placement at Gersh for the 2020-21 school year would be treated as "an election of remedies by the parents as to the student's educational placement" (id. at p. 26).  To be clear, it is the parents who have chosen the remedy of placing the student in an unapproved educational setting outside the district's sphere of influence.  With the student's programming for the 2020-21 school year being under the parents' control due to the election of remedies for placement at Gersh, it is understandable why a CSE did not convene during that school year to engage in educational planning for the student, including a consideration of whether any compensatory services may be warranted to make-up for a loss of skill during school closures and the delivery of instruction and services to the student remotely.  Accordingly, given the extraordinary level of prospective relief already granted to as a result of proceeding I, I do not find it equitable to continue adding to that relief under the circumstances of this case.  The contemplated State and federal guidance do not support directing a CSE to now consider the impact of the delivery of remote instruction to the student during the 2019-20 school year, rather, in developing the student's current programming, the CSE should be focused going forward on a review of the student's progress at Gersh as was directed in the prior State level review decision.

**VII. Conclusion**

Having determined that there is not a sufficient reason to depart from the IHO's determination to dismiss the parents' request for compensatory pendency services, the necessary inquiry is at an end.

I have considered the remaining contentions and find it is unnecessary to address them in light of my determinations above.

**THE APPEAL IS DISMISSED.**


**Dated: Albany, New York**
**December 20, 2021**

‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ **JUSTYN P. BATES**
‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ **STATE REVIEW OFFICER**