UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

**JERRY TOTH**, individually and on behalf of T.T.,

                    Plaintiff,

        – against –

**NEW YORK CITY DEPARTMENT OF
EDUCATION**,

                    Defendant.

---------------------------------------------------------------- X

**MEMORANDUM DECISION AND
ORDER**

21-CV-4245 (AMD) (RER)

**ANN M. DONNELLY**, United States District Judge:

The plaintiff brought this action individually and on behalf of his minor child against the

New York City Department of Education, alleging violations of a prior district-court pendency

order, due process, the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400

*et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Section 504 of

the Rehabilitation Act, 29 U.S.C. § 794a, and the New York Human Rights Law.  Before the

Court is the defendant's motion to dismiss the action under Federal Rule of Civil Procedure

12(b)(6) for failure to state a claim.  For the reasons that follow, the Department's motion is

denied.

## BACKGROUND

The plaintiff's child, T.T., has autism.  The plaintiff alleges that T.T. missed 500 hours of

classroom instruction and 271 hours of home-based instruction from March 1, 2020 to June 30,

2020, when New York schools shut down during the COVID-19 pandemic.  (ECF No. 11-1 at 4

¶ 15.)[1]  The plaintiff seeks 771 hours of compensatory education for T.T., as well as an order

requiring the defendant to "provide appropriate compensatory education to New York City's

children with disabilities for all instruction they missed from 03/01/2020 to 06/30/2020." (*Id.* at

28.)

In 2018, after years of administrative proceedings and negotiations, the defendant agreed

to provide T.T. with 20 hours a week of one-on-one home-based instruction.  (*See* 18-CV-4180,

ECF No. 1 at 10.)[2]  When the defendant did not follow through on the agreement, the plaintiff

sought an order pursuant to 20 U.S.C. § 1415(j), which the court granted, issuing a pendency

order that remained in effect during all relevant times in this litigation.  (ECF No. 21-2 at 3; 18-

CV-4180, ECF No. 15.)

About a year later, on April 17, 2019, the defendant announced that T.T.'s specialized

school was closing because of bankruptcy.  (18-CV-3821, ECF No. 45 at 3.)  T.T.'s parents were

able to place T.T. at the Keswell School, which uses the one-on-one teaching methods and the

speech occupational therapy that T.T.'s pediatrician recommended.  (*Id.* at 4.)  The defendant

refused to pay for Keswell, recommending instead two 12-month special education programs.

(*Id.*)  On June 7, 2019, the plaintiff filed a second action in this Court, seeking a temporary

restraining order requiring the defendant to approve and pay for Keswell.  (*See* 19-CV-3403,

ECF No. 1 at 15.)  When the Court did not issue the restraining order, the plaintiff sent T.T. to

another school.  But that school required T.T. to take a long bus trip, so the plaintiff moved to

---

[1]  Citations to "ECF" refer to filings in the instant case, 21-CV-4245.  Citations to filings in related cases
specify the relevant docket numbers.

[2]  Courts may "look to public records . . . in deciding a motion to dismiss."  *Blue Tree Hotels Inv. (Can.),
Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) (collecting cases);
*see Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 269 (S.D.N.Y. 2005) (taking judicial notice of
related state-court submissions); *Tromp v. City of New York*, 465 F. App'x 50, 52 (2d Cir. 2012)
(reviewing the parties' settlement to decide if it precluded the action).

reopen the case, requesting, among other relief, a preliminary injunction to enforce the Court's

August 27, 2018 pendency order.  (ECF No. 11-1 at 8 ¶ 26; 19-CV-3403, ECF No. 45 at 5–6.)

At about the same time, on July 1, 2019, the plaintiff filed a third federal complaint,

alleging that the defendant's Individualized Instruction Plans ("IEPs") for the 2019–2020 school

year violated the IDEA and the Rehabilitation Act.  (*See* 19-CV-3821, ECF No. 1 at 2 ¶¶ 7–8.)

The plaintiff sought a declaration that the defendant failed to provide T.T. with free and

appropriate public education ("FAPE") as well as 1,000 hours of one-on-one compensatory

instruction.  (*Id.* at 27–28 ¶ 140.)  On February 10, 2021, the Court consolidated the plaintiff's

second and third suits.  (19-CV-3403, ECF No. 45 at 17.)

In addition to the district court litigation, the plaintiff filed a series of administrative

complaints with the defendant, dating back to 2011, most of which challenged the defendant's

yearly IEPs.  (*Id.* at 3.)  The plaintiff alleged that those IEPs did not include the substantial one-

on-one instruction that T.T.'s pediatrician prescribed, and that the defendant placed T.T. in

educational settings where T.T. did not learn.  (*Id.* at 2–3.)  On December 19, 2019 and January

7, 2020, the plaintiff filed additional administrative complaints, focusing on T.T.'s school

placement during the 2019–2020 school year—essentially the same claims the plaintiff brought

in 19-CV-3403, except that, by early 2020, the plaintiff wanted to place T.T. at the Gersh

Academy.  (*Id.* at 6.)  The defendant consolidated those complaints with the ongoing

proceedings.  (*Id.*)  On April 20, 2020, an Impartial Hearing Officer ("IHO") ruled that the

Department failed to provide T.T. a FAPE for the 2017–2020 school years, awarded the plaintiff

prospective tuition and costs for Gersh for the 2020–2021 school year, ordered that T.T.'s

placement include one-on-one speech and occupational therapy, and awarded 600 hours of

compensatory education.  (*Id.* at 7.)  The plaintiff and the defendant cross-appealed the IHO's

decision.  (*Id.*)  On July 29, 2020, a State Review Officer ("SRO") dismissed the defendant's appeal and sustained the plaintiff's appeal in part, awarding an additional 20 hours a week of one-on-one home-based instruction for the 2020–2021 school year.  (*Id.*)

Meanwhile, the parties also engaged in settlement negotiations, focusing specifically on the plaintiff's 2019–2020 claims.  They reached an agreement on May 24, 2021, resolving "all remaining claims that were raised in [the two] consolidated cases [before the district court], and any and all claims remaining in the underlying administrative proceedings."  (ECF No. 21-3 at 2.)  The defendant agreed to give the plaintiff $43,200 for compensatory education, and the plaintiff agreed "to release" the defendant "from any and all liability, claims, and/or rights of action arising from or relating to the claims asserted in these consolidated actions and in the underlying administrative proceedings."  (*Id.* at 3 ¶ 2; *id.* at 5–6 ¶ 10.)  The parties filed a stipulation outlining the terms of their agreement, and the Court dismissed the two consolidated cases.  (19-CV-3404, ECF No. 48.)

As the parties were negotiating, the Governor ordered New York schools closed because of the COVID-19 pandemic on March 18, 2020.  (ECF No. 11-1 at 3 ¶ 11.)  The schools stayed closed for the rest of the 2019–2020 school year.  Contending that the school closure once again deprived T.T. of FAPE, the plaintiff began another administrative proceeding, asking the defendant to provide 752 hours of compensatory education.  (ECF No. 21-1 at 3–4.)  An IHO dismissed the complaint with prejudice, because the 2020 agency decisions already redressed the denial of FAPE during the 2019–2020 school year.  (*Id.* at 4–6.)  The plaintiff appealed, but an SRO affirmed on December 20, 2021, finding the claim precluded by both the 2020 administrative decisions and by the settlement agreement the parties had filed in the consolidated district court cases.  (ECF No. 21-2 at 7–10.)

4

On July 28, 2021, the plaintiff filed the complaint in this case.[3]  (*See* ECF No. 1.)  On January 31, 2021, he moved for leave to amend, which the Court granted.  (ECF No. 11.)  The defendant moves to dismiss for failure to state a claim, arguing that the plaintiff's claims are barred by *res judicata*, prior agency decision and a prior contractual release.  (ECF No. 20.)

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).  Although detailed factual allegations are not required, the pleading standard "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citation omitted)).

Although the plaintiff is proceeding *pro se*, he is an experienced, practicing attorney "familiar with the procedural setting presented."  *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010).  Accordingly, the special solicitude given to *pro se* litigants does not apply here.  *Id.*

---

[3]  The defendant concedes that the plaintiff "intends for the Amended Complaint to act as an appeal of the determination of the State Review Office[r] decision . . . dated December 20, 2021" and does not seek dismissal based on any procedural defects related to the administrative-appeals process.  (ECF No. 22 at 7.)

**DISCUSSION**

While the Supreme Court has held that education is not a fundamental right for constitutional purposes, *see San Antonio Ind. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973), "it is universally acknowledged that good schooling for all is essential in a republic." *RV v. New York City Dep't of Educ.*, 321 F. Supp. 2d 538, 540 (E.D.N.Y. 2004). The right to public education is enshrined in New York's constitution. *See* N.Y. Const. Art. XI, § 1; *Campaign for Fiscal Equity, Inc. v. New York*, 100 N.Y.2d 893, 901 (2003) ("The fundamental value of education is embedded in the Education Article of the New York State Constitution."). Courts must therefore treat IDEA cases like this one "with utmost seriousness," and "are mandated to ensure that complaining students are not deprived of opportunities to acquire necessary skills and understanding equal to that of other public school students." *RV*, 321 F. Supp. 2d at 540.

The defendant's arguments for dismissal are variations of claim preclusion. It first contends that the earlier district court litigation between the parties and the plaintiff's administrative complaints have *res judicata* effect. Alternatively, the defendant proposes that the settlement precludes the plaintiff's claims. Finally, the defendant asks the Court to defer to the state administrative agency's dismissal of the plaintiff's claims. I address each argument in turn.

**I.    *Res Judicata***

The Department argues that the 2019 district court litigation and the 2020 administrative decisions preclude the plaintiff's claims under the doctrine of *res judicata*. *Res judicata*, or claim preclusion, dictates that "a final judgment on the merits in one action bars subsequent relitigation of the same claim by the same parties." *Greenberg v. Bd. of Governors of Fed. Rsrv. Sys.*, 968 F.2d 164, 168 (2d Cir. 1992) (citation omitted). This defense applies to judgments by courts and administrative agencies alike, so long as the agency acts in an adjudicative capacity. *Id.* The party raising the defense must show that "(1) the previous action involved an

6

adjudication on the merits; (2) the previous action involved the plaintiffs . . . [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000).

The plaintiff agrees that the first two elements are met.  The 2020 administrative decisions resulted in a final award resolving the plaintiff's claims.  As for the two consolidated district court actions, it has long been settled "that a stipulation of dismissal with prejudice . . . is an adjudication on the merits." *Kimso Apartments LLC v. Dish Network Servs. LLC*, No. 16-CV-6834, 2017 WL 8780452, at *8 (E.D.N.Y. Dec. 20, 2017); *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995).  There is also no dispute that all previous proceedings included the same parties.

The parties dispute only the third element: whether the plaintiff's claims in this action were or could have been brought before.  The defendant argues that the plaintiff's previous pleadings, the settlement agreement and the judicial and administrative rulings included references to the "deni[al of] FAPE in the 2019–2020 school year," which the defendant says are broad enough to encompass the COVID-19 claims, because the current complaint essentially charges a denial of FAPE from March to June of 2020.  (*See* ECF No. 22 at 5, 10–13.)  In the alternative, the defendant argues that the plaintiff could have brought the COVID-19 claims in the previous proceedings, because the parties settled the two consolidated district court cases on May 24, 2021, and the SRO entered a final determination on July 29, 2020, well after the COVID-19 period at issue (from March to June 2020).

The defendant's first argument—that the plaintiff raised the same claims before—is not persuasive.  There was no reference to the pandemic in the plaintiff's previous complaints, the parties' filings, the settlement agreement, or the district court or administrative rulings.  The

courts do not mechanically apply *res judicata*—even when cases rest on "similar or overlapping facts." *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996) (internal citations omitted).  Instead, the courts require defendants to prove that the suits involve "the same transaction," that "the same evidence is needed to support both claims" and that "the facts essential to the [later suit] were present in the [earlier one]." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir. 1992)).  That the proceedings here encompass generally the same school year and the same kind of claim is not enough.  Claims based on school closure during the pandemic quite obviously require different proof than claims alleging deficient IEPs or inappropriate school placement.

The defendant's second argument—that the plaintiff could have raised these claims before—fares no better.  The Second Circuit has held that "if, after the first suit is underway, a defendant engages in actionable conduct, plaintiff may—but is not required to—file a supplemental pleading setting forth defendant's subsequent conduct." *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997).  The court went on to note that a plaintiff's "failure to supplement the pleadings of his already commenced lawsuit will not result in a *res judicata* bar when he alleges defendant's later conduct as a cause of action in a second suit." *Id.*  While in this case, the previous district court actions and administrative complaints were not resolved until after the pandemic began, they commenced months before the New York schools closed.  (*See* 19-CV-3403, ECF No. 45 at 6 (dating the plaintiff's last relevant administrative complaint to January 7, 2020).)  The plaintiff's current claims "plainly could not have been brought prior to" March 2020.  *Maharaj*, 128 F.3d at 97.  Accordingly, *res judicata* does not cover this action.

## II.   The May 24, 2021 Settlement

The defendant maintains that even if the settlement does not carry *res judicata* effect, it is nevertheless a contract that both parties signed, and by which they agreed to be bound.  The

defendant also cites the broad clauses releasing it from all liability connected to any of its actions during the 2019–2020 school year.

It is true, as the defendant points out, that "settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002) (cleaned up). "Where the language of [a] release is clear, effect must be given to the intent of the parties as indicated by the language employed." *Wang v. Paterson*, No. 07-CV-2032, 2008 WL 5272736, at *4 (S.D.N.Y. Dec. 18, 2008) (quoting *Shklovskiy v. Khan*, 273 A.D.2d 371, 372 (2d Dep't 2000)); *see McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (looking to "plain language of the release provision").[4] If an agreement is ambiguous, however, the court may look to extrinsic evidence to determine the parties' intent. *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 517 (2d Cir. 2001) (citing *Stage Club Corp. v. W. Realty Co.*, 212 A.D.2d 458, 459 (1st Dep't 1995)). Whether a contract is ambiguous is a question of law. *See id.* at 514–15 (collecting New York cases).

The defendant argues that the following settlement provisions unambiguously demonstrate that the plaintiff meant to release all claims against the defendant for violations in the 2019–2020 school year:

> WHEREAS, the Parties now wish to resolve all remaining claims that were raised in these consolidated cases, and any and all claims remaining in the underlying administrative proceedings, without further proceedings and without further admission of fault or liability;
>
> 1.    All claims brought by Plaintiffs in connection with these consolidated actions, including but not limited to all claims that were or could have been asserted

---

[4] Courts must apply state law in determining the scope and validity of a release, and the parties do not dispute that New York law covers the parties' agreement. *See Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 15 (2d Cir. 1993) (explaining that even where releases involve federal causes of action, courts should look to state law in interpreting them).

by Plaintiffs in the underlying administrative proceedings, are hereby dismissed, with prejudice, in exchange for the consideration described in paragraph "2" below.

. . .

9.      In consideration for the funding of the Services as set forth in paragraph "2," Plaintiff agrees to withdraw and dismiss with prejudice all claims against the Defendant that were raised or could have been raised in these consolidated actions and in the underlying administrative proceedings, including any claims for attorneys' fees, costs, and expenses accrued [in] these consolidated actions and in the underlying administrative proceedings.

10.     Plaintiff agrees to release and discharge the New York City Department of Education . . . from any and all liability, claims, and/or rights arising from or relating to the claims asserted in these consolidated actions and in the underlying administrative proceedings pertaining to Student, including all claims by Plaintiff for attorneys' fees, costs, and expenses.

(ECF No. 21-3 at 2–3, 5–6.)  The defendant's interpretation is too broad.  All four clauses limit the release to "*these* consolidated actions" and "the *underlying* administrative proceedings."  (*Id.* (emphases added).)  Earlier in the settlement agreement, the parties specifically refer to cases numbered 19-CV-3403 and 19-CV-3821, so it is reasonable to conclude that "these consolidated actions" refer exclusively to those two cases.

In the agreement, the parties also cite specific administrative proceedings: a "December 19, 2019 . . . due process complaint . . . seeking funding for a different private school placement and other educational services."  (*Id.* at 2.)  The parties thus appear to have agreed to release only the claims connected with those three actions.  *See Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 647 (S.D.N.Y. 2004) ("consistent with the principle of *ejusdem generis*, 'the general words of a release are limited by the recital of a particular claim'" (quoting *Herman v. Malamed*, 110 A.D.2d 575, 577 (1st Dep't 1985))); *Vines v. Gen. Outdoor Adver. Co.*, 171 F.2d 487, 492 (2d Cir. 1948) (Hand, J.) ("in a release[,] words of general import, followed or preceded by words relating to specific claims, are, ceteris paribus, limited to the specific claims").

The Department also cites the agreement's opening paragraphs, which refer to the 2019–2020 school year, for the proposition that the settlement applies to all claims that arose out of that school year.  (*See, e.g.*, ECF No. 21-3 at 1 (noting that the plaintiff filed "19-CV-3403" in the district court "seeking prospective funding for the Student's placement at the Keswell School for the 2019–2020 year"); *id.* at 2 ("on or about December 19, 2019, Plaintiff filed a due process complaint seeking an impartial hearing in connection with the 2019–2020 school year").)  But these clauses refer to specific conduct that the plaintiff raised in his district court and administrative complaints—not any and all conduct occurring in 2019 to 2020.  *See Consol. Edison*, 332 F. Supp. 2d at 648 (interpreting the phrase "'potentially arise out of or relate in any way to the Merger Agreement'" "in light of the reference to the claims in the Federal Litigation").

The settlement amount also undermines the defendant's interpretation.  The defendant agreed to pay the plaintiff $43,200 for compensatory education.  (ECF No. 21-3 at 3 ¶ 2.)  In the 2019 district court litigation, the plaintiff sought compensation for over 1,000 hours of one-on-one instruction.  (19-CV-3403, ECF No. 45 at 6.)  In this complaint, the plaintiff seeks an additional 771 hours.  If the settlement covered these new claims, the payment rate would be just $24 per hour.  It is difficult to believe that the plaintiff "would bargain away such a claim" with so little consideration; "the terms of the release cannot reasonably be read to require such a result."  *Consol. Edison*, 332 F. Supp. 2d at 649; *Tarantola v. Williams*, 48 A.D.2d 552, 554 (2d Dep't 1975) (limiting a general release to "the claims specifically bargained for and all claims reasonably related to the bargained items" because of the value of consideration).

The defendant also relies on *Tromp v. City of New York*, 465 F. App'x 50, 52 (2d Cir. 2012), in which the Second Circuit afforded preclusive effect to a settlement agreement.  The

defendant argues that *Tromp* controls because Tromp, like the plaintiff here, agreed to "release and discharge the defendants . . . from any and all claims which were or could have been alleged . . . in the aforementioned action."  *Id.*  But the events giving rise to the two actions in *Tromp*—two arrests—both occurred before Tromp filed his first complaint.  *See id.*  In this case, as explained above, the pandemic did not hit New York until after the plaintiff filed the previous district court and administrative actions.  That "context" must inform the interpretation of the plaintiff's agreement.  *Consol. Edison*, 332 F. Supp. 2d at 647; *accord A.A. Truck Renting Corp. v. Navistar, Inc.*, 81 A.D.3d 674, 675 (2d Dep't 2011) (limiting "[w]ords of general release" to claims "which might then have been adjudicated *as a result* of pre-existent controversies" (emphasis added) (citation omitted)).

The defendant claims, however, that the plaintiff "was clearly aware of the" pandemic when the parties signed the settlement on May 24, 2021.  (ECF No. 25 at 5.)  The plaintiff responds that the parties never discussed any pandemic-related claims during the settlement negotiations, and instead continued to litigate them on a separate track before the state agency.  At this early litigation stage, the defendant has not demonstrated that the settlement agreement unambiguously precludes the plaintiff's claims.  *See Matson*, 631 F.3d at 63 (directing courts to assess only whether "the plaintiff pleads factual content" entitling him to relief).

### III.    Deference to the Administrative Decision to Dismiss

Finally, the defendant argues that established principles of administrative law require the Court to defer to the 2021 administrative decisions to dismiss the plaintiff's COVID-based complaint on grounds that the agency's 2020 decisions already redressed the denial of FAPE during the 2019–2020 school year.  (*See* ECF Nos. 21-1, 21-2.)

As the defendant observes, "the role of the federal courts in reviewing state education decisions" is "circumscribed," *Gagliardo v. Arlington Cent. Sch. Dist.,* 489 F.3d 105, 112 (2d

Cir. 2007) (internal quotation marks and citation omitted), and district courts should "defer to the SRO's decision on matters requiring educational expertise unless [they] conclude[] that the decision was inadequately reasoned," *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012).  But that principle applies to the State's "educational decisions," *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009), that the courts generally "lack the specialized knowledge and experience . . . to resolve," *R.E.*, 694 F.3d at 184.

     However, it is also "well established that the courts need not defer to an agency where the issue involved is a strictly legal one, involving neither the agency's particular expertise nor its fact finding prowess." *Bd. of Ed. of City Sch. Dist. of City of New York v. Harris*, 622 F.2d 599, 607 (2d Cir. 1979); *accord G.D.S. ex rel. Slade v. Northport-E. Northport Union Free Sch. Dist.*, 915 F. Supp. 2d 268, 274–75 (E.D.N.Y. 2012).  The IHO and the SRO dismissed the plaintiff's complaint because they believed it "was, or should have been, raised in" the earlier 2020 proceedings.  (ECF. No. 21-2 at 7.)  That was a purely legal determination that involved no educational expertise.  *See Wilson v. HSBC Bank, USA*, 834 F. App'x 607, 608–09 (2d Cir. 2020) (summary order).  Accordingly, deference to the state agency is not required.

## CONCLUSION

     For these reasons, the Department's motion to dismiss the plaintiff's amended complaint for failure to state a claim is denied.


**SO ORDERED.**

                              s/Ann M. Donnelly
                    _____
                              ANN M. DONNELLY
                              United States District Judge

Dated: Brooklyn, New York
       January 5, 2023